UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YACINE OUNIS, on behalf of himself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>  v.<br><br>DASHUB, LLC,<br><br>    *Defendant*. | Case No.: 18-cv-5064<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

  Yacine Ounis, Plaintiff herein, by his attorneys, for himself and all others similarly situated, alleges and complains of Defendant as follows:

**NATURE OF THE ACTION**

  1. Defendant is a licensed automobile dealer that sells vehicles purchased at auction to consumers nationwide.

  2. After receiving a deposit from the consumer, Dashub bids on and buys used vehicles at auctions and then sells the vehicle to the consumer for a fee.

  3. Not satisfied with the money it makes by charging consumers certain fees for its services, Defendant rakes in illicit profits by falsifying the winning bid prices on the vehicles it purchases.

  4. Specifically, Defendant represents to its customers that Defendant paid a higher price at auction than it actually paid; charges its customers that inflated price; and pockets the difference.

1

5. Not only does Defendant misrepresent the vehicle price to its customers, it misleadingly creates the appearance that Defendant has provided the customers with substantial savings.

6. Defendant's conduct constitutes a breach of its contracts with Plaintiff and the Class and serves to unjustly enrich Defendant.

7. In addition to charging more than the contracts allow by falsification of winning bid prices, Defendant unlawfully disclaims all warranties, and delivers used vehicles to New York consumers without proper certification of roadworthiness in violation of New York Vehicle and Traffic Law § 417 and New York State General Business Law § 349.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. § 1332(d), because this case is a class action, the class has more than 100 members, the amount in controversy exceeds $5,000,000, and Plaintiff is a citizen of a different state than Defendant.

9. This Court has supplemental jurisdiction to determine state law claims per 28 U.S.C. § 1367.

10. Venue is proper in this District per 28 U.S.C. § 1391 because Defendant has a (non-principal) place of business in this District and conducts business in this District.

## PARTIES

11. Plaintiff Yacine Ounis has at all relevant times been a resident of Rensselaer County, New York.

12. Defendant Dashub, LLC ("Dashub") is a foreign limited liability company organized and existing under the laws of the state of Texas with its principal place of business in Tampa, Florida.

13. Defendant has a non-principal place of business in Syosset, New York.

## FACTS

**A.   Dashub's Unlawful Conduct**

14. In the United States, about nine (9) million vehicles are sold annually at auction to the highest bidder. The advantage of buying vehicles at auction is the potential for substantial savings to the buyer. Many of these auctions are conducted online.

15. Frequently, only licensed automobile dealerships may bid on vehicles at auction, which means that the average consumer, who does not have a dealership license, cannot bid.

16. Dashub is a licensed dealership that markets itself as the solution for unlicensed consumers who want to bid on used vehicles at auction.

17. Dashub's website states, "As a licensed dealership, Dashub bids on your behalf, giving you the opportunity to get your new car at the same prices that dealerships pay, usually for pennies on the dollar!"[1]

18. On Dashub's website, consumers can set up an account, view available vehicles, and authorize bids on selected vehicles.

19. To make a bid, a consumer navigates to Dashub's vehicle listing page, which includes a white text box. In this box, the consumer types the amount of her bid ("Bid Amount") and clicks on the "Place a Bid" button.

---

[1] https://dashub.com/about-dashub (last accessed on August 30, 2018)

20. Alternatively, the consumer may provide Dashub with the consumer's Bid Amount via telephone.

21. The Bid Amount represents the maximum amount the consumer has authorized Dashub to bid on the selected vehicle.

22. Dashub's website explains, "Your bid is the *maximum* price that you are willing to pay for the vehicle itself at the auction. Once the vehicle has been won, the final sale price ("Final Sale Price") will include your winning bid ("Winning Bid Amount"), shipping costs as well as additional fees." (Emphasis added.)[2]

23. The Winning Bid Amount is supposed to be equal to the price Dashub paid for the vehicle at auction.

24. Dashub refers to the Winning Bid Amount on its uniform Bill of Sale as the "Vehicle Price."

25. "Shipping costs and additional fees" include (1) an auction fee, (2) Dashub's transaction fee, (3) Dashub's document fee, and (4) shipping cost.[3]

26. Dashub charges consumers the transaction and document fees to compensate Dashub for its services.

27. In sum, the Final Sales Price charged to a consumer is limited to the Winning Bid Amount plus the auction fee, Dashub's transaction and document fees, and a shipping cost.

28. However, Dashub does not calculate the Final Sale Price using the actual Winning Bid Amount. Instead, Dashub buys the vehicle for one price then charges the consumer a higher price.

---

[2] https://dashub.com/helpcenter/guides#bidding-power (last accessed on August 30, 2018)
[3] https://dashub.com/helpcenter/guides#bidding-power (last accessed on August 30, 2018).

29. For example, Dashub customer Jane Doe enters a Bid Amount of $10,000.00 for her desired vehicle. Dashub buys the vehicle at auction with a Winning Bid Amount of $9,000.00.

30. Dashub then misrepresents to Jane Doe that the Winning Bid Amount, or Vehicle Price, was $9,500.00. Dashub charges this inflated Vehicle Price to Ms. Doe in addition to the fees listed in Paragraph 23.

31. Adding to the deception, Dashub congratulates Ms. Doe on acquiring her vehicle for less than her Bid Amount.

32. In reality, Ms. Doe paid $500.00 more than she should have and Dashub pocketed $500.00 more than it should have.

33. Dashub – not the consumer – is the buyer at auction.

34. After it places the winning bid and buys the vehicle, Dashub takes title.

35. Dashub then charges the consumer the difference between the consumer's deposit and the Final Sale Price (including Dashub's disclosed fee as well as its fraudulent mark-up of the Vehicle Sale Price) and arranges for delivery of the Vehicle and signing over of Title.

36. Further, after Dashub buys the vehicle at auction, the listing disappears from Dashub's website and the consumer cannot see the actual Winning Bid Amount.

**B.     Plaintiff's Facts**

37. On April 17, 2018, using Dashub's website, Plaintiff paid a required $1,300.00 deposit and entered a Bid Amount of $10,830.00 for a 2012 BMW 3 Series ("Subject Vehicle").

38. On April 18, 2018, Dashub emailed Plaintiff stating, "CONGRATULATIONS on being the high bidder and winning your new vehicle!" The email attached a buyer order, which represented that the Vehicle Price, or Winning Bid Amount, was $10,600.00.

5

39. Based on Dashub's representation, Plaintiff reasonably believed that he had acquired the Subject Vehicle for $230.00 less than his Bid Amount of $10,830.00.

40. In reality, however, the actual Winning Bid Amount for the Subject Vehicle was $10,100.00 – $500.00 more than Dashub represented.

41. By inflating the Vehicle Price, Dashub, to the detriment of Plaintiff and class members, profits substantially more from each transaction than Dashub should have.

42. Plaintiff and the Class pay the misrepresented Vehicle Price in addition to fees designed, in part, to compensate Dashub for its services.

43. Specifically, Dashub charged Plaintiff a Vehicle Price of $10,600.00 as well as the following fees:

   a. Auction Fees of $658.00;

   b. Dashub Transaction Fee of $499.00;

   c. Dashub Document Fee of $85.00; and

   d. Shipping Fee of $275.00.

44. Plaintiff's experience with Dashub is common to the Class as evinced by numerous online complaints about Dashub buying a vehicle at one price and then charging the consumer a higher price.

45. By way of example only, one Dashub customer wrote that Dashub charged him a Vehicle Price of $25,000.00, but the vehicle sold at auction for at least $1,000.00 less.[4]

46. Describing the exact same scenario, another Dashub customer stated, "Dashub charges you higher than what it pays [the auction house] and pockets the difference."[5]

---

[4] https://teslamotorsclub.com/tmc/threads/dashub-auction-scam.106019/ (last accessed on August 30, 2018).
[5] http://consumerpete.com/reviews/dashub-review (last accessed on August 30, 2018).

47. Put bluntly, Dashub lies to its customers about the Vehicle Price and directly profits from the lie.

**C.     Plaintiff's Facts Relevant to the New York Statewide Class**

48. On the Bill of Sale Dashub provided to Plaintiff, Dashub represented that the Subject Vehicle was sold "As Is With No Warranty."

49. Dashub's uniform Bill of Sale required Plaintiff to sign an acknowledgement that "This vehicle is sold as is, with no warranty."

50. However, in New York, per N.Y. Veh. & Traf. Law § 417, an automobile dealer that sells a used vehicle must deliver the vehicle with a certification that the vehicle is roadworthy ("Section 417 Certification").

51. Specifically, N.Y. Comp. Codes R. & Regs. tit. 15, § 78.13(b)(1) states, "A retail dealer who sells a secondhand motor vehicle to be used on the public highways of this State must deliver to the purchaser a statement as follows: 'If this motor vehicle is classified as a used motor vehicle, the dealer named above certifies that the entire vehicle is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery.'"

52. A dealer may not issue the Section 417 Certification until it has inspected the vehicle and ensured that the vehicle complies with the standards set forth in N.Y. Comp. Codes R. & Regs. tit. 15, § 78.13(c)(1)-(18).

53. Dashub did not conduct inspections of the used vehicles sold to New York consumers and Dashub did not provide to Plaintiff and other New York consumers a Section 417 certification.

7

54. Instead, Dashub attempted to do the polar opposite: Dashub explicitly disclaims that its vehicles are roadworthy.

55. Indeed, Dashub's misrepresentations with regard to the certification of roadworthiness creates the false impression that Dashub may deliver to New York consumers used vehicles that are not roadworthy and that consumers who receive non-roadworthy vehicles have waived their rights and are without recourse.

## CLASS ALLEGATIONS

56. Plaintiff brings this action as a class action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of the following classes:

   a. The Nationwide Class:

   All persons nationwide who purchased a used vehicle at auction through Dashub and were charged a Vehicle Price greater than the Winning Bid Amount.

   b. The New York Statewide Class:

   All persons in the state of New York who purchased a used vehicle at auction through Dashub for which Dashub disclaimed the roadworthiness of the vehicle and/or provided no Section 417 Certification.

57. The following persons are excluded from the Classes: (1) Defendant and its subsidiaries and affiliates; (2) anyone employed by counsel for Plaintiff; and (3) any judge to whom this case is assigned and his or her immediate family and staff.

58. <u>Numerosity</u>: Based on Dashub's claims of having approximately 250,000 registered users and listings of used vehicles in excess of 150,000, the Class includes thousands, if not tens of thousands, of consumers nationwide. Therefore, joinder of all class members is impracticable.

59. Although the exact number of Class members and their addresses are unknown to Plaintiff, they are readily ascertainable from Dashub's records.

60. <u>Existence and Predominance of Common Issues:</u>  Common questions of law and fact exist as to Plaintiff and Class members and predominate over questions affecting only individual Class members.

61. These questions include, but are not limited to, the following:

    i. Whether Dashub routinely charges its customers (Plaintiff and the Class) a Vehicle Price that exceeds the Winning Bid Amount;

    ii. Whether Dashub breached its contracts with Plaintiff and the Class by charging Plaintiff and the Class a Vehicle Price that exceeded the Winning Bid Amount;

    iii. Whether Plaintiff and the Nationwide Class are entitled to actual, punitive or other damages, costs, attorney fees and other relief because of Dashub's practices;

    iv. Whether Dashub inspects the used vehicles sold to New York consumers;

    v. Whether Dashub ensures that the used vehicles sold to New York consumers meet the applicable standards of roadworthiness;

    vi. Whether Dashub provides to New York consumers the required Section 417 Certification;

    vii. Whether Dashub unlawfully disclaims New York's warranty of roadworthiness; and

    viii. Whether Plaintiff and the New York Class are entitled to actual, punitive or other damages, costs, attorney fees and other relief because of Dashub's practices.

62. <u>Typicality:</u>  Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff's purchase of the Subject Vehicle used the same process as all other Class members. Dashub overcharged Plaintiff in the same manner as it overcharged the Class. In addition, the factual underpinning of Dashub's wrongful conduct is common to the Class and represents a common thread of misconduct resulting in injury to all members of the Class.

63. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class and are based on the same legal theories.

64. <u>Adequacy</u>:  Plaintiff will fairly and adequately represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel has any interests that conflict with or are antagonistic to the interests of the Class.

65. Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why Plaintiff and his counsel will not vigorously pursue this matter. Further, Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by seeking the maximum possible recovery for the Class.

66. <u>Superiority</u>:  The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

67. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Dashub's conduct.

68. Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

69. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

70. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

71. The New York Statewide Class may be certified per Rule 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

72. In the alternative the Class may be certified because:

 a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant.

 b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## CLAIMS FOR RELIEF

### COUNT ONE (FOR THE NATIONWIDE CLASS)
### Breach of Contract

73. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

74. Plaintiff and Dashub entered into a binding contract for the purchase of the Subject Vehicle.

75. The contract required Dashub to bid on the Subject Vehicle within guidelines provided by Plaintiff and, if the bid won, , the contract entitled Dashub to charge Plaintiff only the Winning Bid Amount (actual vehicle sales price) plus certain other fees.

76. Dashub breached the contract by charging Plaintiff a Vehicle Price of $10,600.00 despite a Winning Bid Amount of only $10,100.00.

77. All class members' contracts with Dashub contain the same terms and conditions as Plaintiff's.

78. Dashub unlawfully charges all class members a Vehicle Price that is greater than the Winning Bid Amount and pockets the difference.

79. As a result of Dashub's breach of contract, Plaintiff and the Class are entitled to compensatory damages in an amount to be proven at trial.

80. Further, Dashub's breach of contract was accompanied by a willful, reckless disregard for the rights of Plaintiff and the Class and constitutes a "virtually larcenous" scheme, entitling Plaintiff and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## COUNT TWO (FOR THE NATIONWIDE CLASS)
### Unjust Enrichment

81. Plaintiff hereby repeats, realleges and incorporates by reference the foregoing paragraphs.

82. By charging Plaintiff and the Class a Vehicle Price in excess of the Winning Bid Amount, Dashub was unjustly enriched at the expense of Plaintiff and the Class.

83. Dashub's retention of the overcharge is inequitable and against good conscience.

84. As a result of Dashub's unjust enrichment, Plaintiff and the Class are entitled to a refund in the amount of the overcharge.

85. Further, Dashub's unjustly enriched itself in a manner that consistent with a willful, reckless disregard for the rights of Plaintiff and the Class and that constitutes a "virtually larcenous" scheme, entitling Plaintiff and the Class to attorney fees, costs, and punitive damages in amounts to be proven at trial.

## COUNT THREE (FOR THE NEW YORK STATEWIDE CLASS)
### Violation of New York Vehicle and Traffic Law § 417

86. Plaintiff hereby repeats, realleges, and incorporates by reference the foregoing paragraphs.

87. As described in Paragraphs 48-55 above, in New York, before an automobile dealer can sell a used vehicle to a consumer, the dealer must (1) inspect the vehicle, (2) ensure that the vehicle's equipment meets the standards required by the applicable regulations, and (3) deliver in writing to the consumer a Section 417 Certification that the vehicle is roadworthy.

88. At no time did Dashub inspect and ensure the roadworthiness of the used vehicles Dashub sold to New York consumers.

89. At no time did Dashub provide to New York consumers the required Section 417 certification.

90. In fact, Dashub attempted to disclaim all of its statutory responsibilities by representing to Plaintiff and the Class that the used vehicles were sold "As Is With No Warranty."

91. Dashub's breach of N.Y. Veh. & Traf. Law § 417 and N.Y. Comp. Codes R. & Regs. tit. 15, § 78.13(c)(1)-(18) entitles Plaintiff and class members to injunctive relief that (1) enjoins Dashub from selling used vehicles to New York consumers without first inspecting the vehicles, ensuring that the vehicles are roadworthy, and providing to New York consumers the required Section 417 Certification and (2) for used vehicles already sold to New York consumers, an order requiring Dashub to pay for a third-party inspection of the vehicles to ensure that the vehicles are roadworthy. For vehicles found not to be roadworthy, the Court may award appropriate relief.

**COUNT FOUR (FOR THE NEW YORK STATEWIDE CLASS)**
**Violation of New York State General Business Law § 349**

92. Plaintiff hereby repeats, realleges, and incorporates by reference the foregoing paragraphs.

93. Dashub's unlawful practice of charging Plaintiff and the Class a Vehicle Price in excess of the Winning Bid Amount, unlawfully disclaiming New York's statutory warranty of roadworthiness, and failing to provide the Section 417 Certification are deceptive acts and practices committed in the conduct of trade, commerce, or the furnishing of a service in this state.

94. These deceptive acts and practices constitute a violation of New York General Business Law § 349 independent of whether they also constitute a violation of any other law.

95. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact on the public.

96. Plaintiff and the Class have been damaged by Dashub's deceptive acts and practices.

97. As a result of Dashub's violations of § 349, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, actual damages, treble damages up to an additional $1,000 per class member, punitive damages, costs and attorney fees.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

WHEREFORE, Plaintiff and members of the Class respectfully request that this Court award:

    a. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative and appointing his attorneys as class counsel;

    b.      A judgment declaring that Defendant has committed the violations of law alleged in this action and an injunction forbidding any future violations and requiring Dashub to pay for third-party inspections of used vehicles already sold to New York consumers;

    c.      An award of actual damages, treble damages, statutory damages, rescission, and punitive damages;

    d.      An award of attorney fees and costs; and

    e.      Such other, different and further relief that may be just and proper.

DATED: September 7, 2018.

*s/ Daniel A. Schlanger*
Daniel A. Schlanger, Esq.
Evan S. Rothfarb, Esq.
SCHLANGER LAW GROUP LLP
9 East 40th Street
Suite 1300
New York, NY  10016
Telephone:  212-500-6114
Facsimile:  646-612-7996
dschlanger@consumerprotection.net

*s/ Brian K. Herrington*
Brian K. Herrington, Esq. (to apply *phv*)
SCHLANGER LAW GROUP LLP
602 Steed Road
Suite 100
Ridgeland, MS  39157
Telephone:  601-208-0013
Facsimile:  646-612-7996
bherrington@consumerprotection.net

*Attorneys for the Plaintiff*